# Meredith, Appellant, *v.* Punxsutawney Nat. Bank.

*Sheriff's sale—Agreement by purchaser—Parties—Fraud—Stat ute of frauds—Evidence—Damages.*

1. Where suit is brought upon a single agreement, made by one person, acting for himself and others, in regard to properties, some of which belong to one and some to the other, the action must be in the names of all such parties; if it is not so brought there can be no recovery.

2. Where a property is purchased at sheriff's sale under an oral agreement that title will be taken and held for another, the measure of damages, in case of a breach, will be the loss which is suffered by reason of the refusal to convey, provided possible bidders were deterred by the action of the purchaser, or there was fraud in the transaction at its inception, or a portion of the purchase money was paid by or for the party intended to be benefited by the contract.

3. But if none of these elements appear, the statute of frauds forbids recovery except for the money expended and services performed on the faith of the oral agreement.

4. The breach of the agreement itself is not evidence from which fraud at its inception can properly be deduced.

Argued September 23, 1922. Appeal, No. 74, Oct. T., 1922, by plaintiff, from judgment of C. P. Jefferson Co., Aug. T., 1920, No. 113, for defendant, on questions of law raised by affidavit of defense, in case of W. R. Meredith v. Punxsutawney National Bank and the Farmers and Miners Trust Company. Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit for breach of parol contract. Before COR-BET, P. J.

The opinion of the Supreme Court states the facts.

Judgment for defendant on questions of law raised by affidavit of defense. Plaintiff appealed.

*Error assigned* was judgment, quoting it.

*Geo. F. Whitmer,* with him *W. L. McCracken,* for appellant.—A fair inference from the facts alleged in the statement of claim, if proven, would be that there was fraud on the part of defendants at the inception of the agreement and a jury might so find. It is a question for the jury: McCafferty v. Griswold, 99 Pa. 270; Grunwald v. Hahn, 176 Pa. 37; Meason v. Kaine, 67 Pa. 126.

Where fraud, artifice or trick is resorted to to procure property at sheriff's sale at an undervalue, the purchaser there takes as trustee for the person misled: Hartzell v. Whitmore, 271 Pa. 575; Faust v. Haas, 73 Pa. 295; Cook v. Cook, 69 Pa. 443.

*Lex N. Mitchell,* of *Mitchell & Morris,* with him *Jacob L. Fisher,* for appellee.—The parol agreement alleged as a basis of recovery is void under the statute of frauds: Clark v. Partridge, 2 Pa. 13; Mead v. Conroe, 113 Pa. 220; Pocono Spring Water Co. v. Ice Co., 214 Pa. 640; Sawyer v. Pittsburgh, 217 Pa. 17; Carson v. Painter, 69 Pa. Superior Ct. 490; Jourdan v. Andrews, 258 Pa. 347; Rhodes v. Good, 271 Pa. 117.

The case is ruled by Hertzog v. Hertzog, 34 Pa. 418.

The parol agreement alleged as a basis of recovery does not create a resulting or trust ex maleficio: Pocono Spring Water Co. v. Ice Co., 214 Pa. 640; Carson v. Potter, 18 Pa. 457; Shaffner v. Shaffner, 145 Pa. 163.

OPINION BY MR. JUSTICE SIMPSON, January 3, 1923:

The court below entered judgment against plaintiff, on questions of law raised in the affidavit of defense, and therefrom he appeals.

The statement of claim avers that plaintiff and the Meredith Brick Company, of which he was the president and principal stockholder, were indebted to defendants in the sum of $35,000, part of it being represented by a judgment note which they had been called upon to pay; whereupon, "on behalf of himself and the brick company," he entered into a parol agreement with defend-

ants, by which they were to proceed on the note; by sheriff's sale obtain title to the real and personal properties of plaintiff and the brick company; he was thereafter to operate, develop and exploit them, the moneys thus realized to be paid to defendants in extinguishment of their claims against plaintiff and the brick company; and, after their liquidation, the unsold properties were to be conveyed to him. It is alleged also that in accordance therewith sheriff's sales were had, the titles vested in defendants, and plaintiff did all he agreed to do. It is also said that, by a supplemental agreement, entered into after the sheriff's sale (no additional consideration being stated), the time limit, within which the contract was to continue in force for plaintiff's benefit, was fixed at two years from September 30, 1915.

The statement further avers that, in accordance with these agreements, defendants received $15,000 from the sale of coal mined from the properties; $2,200 from gas leases thereof; $9,000 from paving blocks sold; and $3,000 from bills receivable of the brick company. This apparently exhausted everything alleged to be covered by the agreements, except two tracts of land, one of which, containing 114 acres, is averred to have been sold to the Knoxdale Coal & Coke Company for $4,000, from which it has since mined coal of the value of $18,375, leaving still thereunder coal of the value of $250,000; the balance of the land being later sold for $34,783.05. Both of these real estate sales were made within two years after September 30, 1915.

Plaintiff's claim is that the items of $15,000, $2,200, $9,000 and $3,000 should be credited upon the indebtedness which he and the brick company owed defendants; that the latter should be charged, not with the $4,000 received for the 114 acres, but with the $18,375 and $250,000 value of coal under the tract at the time of its sale; and with the $34,783.05 received on the conveyance of the last of the properties; judgment to be entered ac-

cordingly. It ought to be unnecessary to say that such a claim has no legal foundation.

It will be noticed that suit is brought by plaintiff alone, without the joinder of the brick company, although it is alleged the latter had other creditors and stockholders who were interested in its assets as sold by the sheriff to defendants; and, as already quoted, the alleged contract in relation thereto was made by plaintiff "on behalf of himself and the brick company." This being so, it was a joint contract, the action should have been joint, and, as it was not, there can be no recovery: Marys v. Anderson, 24 Pa. 272; Meason v. Kaine, 67 Pa. 126.

We might well close our opinion at this point, for what has been said is alone sufficient to sustain the judgment; but in order to avoid, if possible, a futile joint action hereafter, we may add that, under the facts stated, neither plaintiff, nor plaintiff and the brick company together, could recover the value of the real estate; the statute of frauds forbids this: Bryan v. Douds, 213 Pa. 221; Lancaster Trust Co. v. Long, 220 Pa. 499; McBride v. Western Penna. Paper Co., 263 Pa. 345, 349.

If they had paid any part of the purchase price at the sheriff's sale, or if any one had been deterred from bidding by the action of defendants, or if there had been fraud in the transaction at its inception, a different question would arise. These things are not averred, however, and hence the only sums which could be collected for a breach of the contract, would be the moneys expended and services performed on the faith of it: Meason v. Kaine, 67 Pa. 126; Rineer v. Collins, 156 Pa. 342. There is no averment here of any facts upon which to predicate such a claim.

The cases cited by plaintiff, as establishing the fact that the value of the land may be recovered, despite the statute, are easily distinguishable. In Cook v. Cook, 69 Pa. 443, and Hartzell v. Whitmore, 271 Pa. 575, bidders at the sheriff's sale had ceased bidding because told by the vendee of his arrangement to purchase for the then

owner. In Faust v. Haas, 73 Pa. 295, after a property had been knocked down, at the sheriff's sale, to one who admittedly was to hold for the owner, a third party obtained an assignment of the bid, on an agreement that he would carry out the plan for the benefit of the owner. In Wolford v. Herrington, 74 Pa. 311, a wife was induced not to record a deed which she held for the property about to be sold by the sheriff, as the property of her husband, upon an agreement that, if she did not, the party would purchase for her benefit, and, after the sale, would give her a written agreement so stating, but later refused to do so. Cowperthwait v. First National Bank of Carbondale, 102 Pa. 397, is to the same effect; and the principle under consideration is made especially clear by the fact that on a prior appeal in that case, reported in 10 W. N. C. 525, a judgment in favor of the wife was reversed because it was not then shown she had an equitable interest in the property at the time of the sheriff's sale, by reason of having paid part of the purchase money; this fact being proved, however, at the second trial. In Goodwin v. McMinn, 193 Pa. 545, the contest was between creditors of the former owner, one of whom obtained title to much more property than was necessary to secure his debt (though he already had, unknown to the grantor, received a large part of it), upon a promise to reconvey after the debt was paid, as it later was by a sale of part of the land. It was held the concealment of the fact of part payment was a fraud, and the other creditor, who had purchased the land at sheriff's sale, was entitled to recover it in ejectment.

None of the controlling principles of those cases are appropriate in the present one, and hence the general rule applies and the alleged agreement is defeated by the statute. In apparent recognition of this, appellant argues that the failure to comply with it, was evidence from which a jury could find that defendants were guilty of a fraud at the time it was made. This claim, though often asserted, has always been overruled. It suffices to

refer to McCloskey v. McCloskey, 205 Pa. 491, 495, where we said: "The only misconduct charged is that the appellees now refuse to recognize the trust, and that, notwithstanding their promise to be bound by it, they now declare they will not regard it. This is not enough to take the case out of the plain words of the statute......
It is only when a trustee refuses to perform or recognize a trust, that courts are asked to declare its existence as against him, and if a trust, which had no legal existence under the statute, can be brought into being as within the exception, simply because a trustee breaks his promise to perform, no case will be without the exception. 'The statute of frauds would be worse than waste paper, if a breach of the promise created a trust in the promisor, which the contract itself was insufficient to raise': Kellum et al. v. Smith, 33 Pa. 158."

In the instant case there is not even an averment of fraud at or before the time of the sheriff's sale, but only an attempt to have it inferred because of a breach of the alleged agreement.

In order to avoid misapprehension, we should add that there are other fatal objections to the claim as now presented, but what has been already stated makes it unnecessary to consider them.

The judgment of the court below is affirmed.